CULLINAN, State Excise Com'r, v. BURKHARD et al.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. TRIAL—SUBMISSION TO COURT—APPEAL—DECISIONS OF FACTS.

Where, at the close of the evidence, each side moved for a disposition of the case as on questions of law, they thereby conferred on the presiding justice the power to draw any legitimate deductions from the facts which might be necessary to his decision, and it was the duty of the Appellate Division on appeal from that decision to adopt the inferences, if divergent, most favorable to the party for whom the trial justice rendered his judgment.

2. INTOXICATING LIQUORS—BONDS—ACTIONS—NATURE.

A bond conditioned for the observance of the liquor law is in the nature of a contract for the observance by the licensee of the provisions of such law. The sum named in the bond is fixed as liquidated damages, and the action to recover the same is in contract, and not to recover a penalty.

3. SAME—LEGISLATIVE POWERS.

The Legislature, having control of the traffic in liquor, has also the right, in addition to other civil and criminal penalties prescribed for violations of the liquor laws, to require a bond conditioned for the observance of the liquor law by the licensee.

4. SAME—BONDS—CONDITIONS—CONSTRUCTION.

A condition of a liquor dealer's bond that he would not "suffer or permit" any gambling or disorder on the premises relates to illegal acts of others than the person licensed, and does not limit another clause of the bond to the effect that the dealer would not violate the liquor tax law to his individual acts as distinguished from those performed by his employés.

5. SAME—ILLEGAL SALES—LIABILITY ON BOND—SALES BY CLERK—DISREGARD OF INSTRUCTIONS.

A liquor dealer and the surety on his bond conditioned for the observance of the provisions of the liquor law are liable for the act of the liquor dealer's clerk in improperly selling liquor while engaged in the performance of the liquor dealer's business, even though in such act he violated his specific instructions.

6. SAME—ACTS OF AGENT—PERSONAL MOTIVES.

While a saloonkeeper is liable for an act of his servant within the general scope of his authority, even though at variance with special instructions, yet he is not liable for such an act committed in pursuance of a deliberate purpose to injure his master by exposing him to liability.

Appeal from Trial Term, Monroe County.

Action by Patrick W. Cullinan, as state commissioner of excise, against John F. Burkhard and the Title & Guarantee Company of Rochester. From a judgment dismissing the complaint, and from an order denying a new trial (84 N. Y. Supp. 825), plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

William E. Schenck, for appellant.

Charles J. Bissell, for respondents.

HISCOCK, J. This action was brought by plaintiff to recover the sum of $500 upon and by virtue of a bond executed by the defendants under the provisions of the liquor tax law upon the application by the defendant Burkhard for the issuance of a liquor tax certificate to him

covering the sale of liquor by a pharmacist. Such recovery was sought upon the ground that said individual defendant had violated the provisions of said liquor tax law, and that therefore he, and the other defendant as surety, had become liable upon said bond. The alleged violation consisted of the sale of liquor without production by the vendee of the necessary physician's prescription. The learned trial justice before whom the case was tried dismissed the complaint upon the ground solely that said unlawful sale, which was undisputed, was made by the defendant Burkhard's clerk, not only without his authority, but against his express commands.

We think that the learned justice erred in the views and principles which he applied to the solution of the questions presented in the case, and that the judgment must be reversed. The facts presented to us are practically without dispute. If any divergent inferences, even, were to be drawn from them, it would be our duty to adopt those most favoring the defendants, because at the close of the evidence each side moved for a disposition of the case as upon questions of law only, thereby conferring upon the justice presiding the power and duty to draw any legitimate deductions from the facts which might be necessary to or involved in his decision, and which, as already stated, was in favor of the defendants. The individual defendant was a pharmacist doing business in the city of Rochester. He made application for a certificate for the business of trafficking in liquor by him as a duly licensed pharmacist, and upon such application he, with the other defendant as surety, executed the requisite and usual bond. Said bond was conditioned in the sum of $500 that, amongst other things, the holder of the certificate would not "suffer or permit any gambling to be done in the place designated by the liquor tax certificate in which the traffic in liquors was (is) to be carried on, or in any yard, booth, garden or any other place appertaining thereto or connected therewith, or suffer or permit such premises to become disorderly, and would not violate any of the provisions of the liquor tax law." Burkhard was compelled to be absent from his store, and while he was so absent a clerk in his regular employment sold liquor without requesting the physician's prescription. Such sale was in direct violation of the employer's instructions, but there was no evidence that the clerk did it wantonly, willfully, or maliciously in pursuit of any object or purpose of his own, as distinguished from the business of his employer in which he was engaged. The simple and narrow question presented to us is whether the principal and surety are liable upon a bond such as was given in this case, where the violation complained of consists of an unlawful sale of liquor by an employé acting in the regular line of his employment, but against the commands of his employer, in respect to that particular detail. We think they are. It is so well settled by controlling authority that the learned counsel for the respondents concedes it, and we without elaboration and discussion may assume the proposition that this action is upon a contract obligation, and not one to recover a penalty or forfeiture imposed by statute; that the bond upon which defendants are sought to be held in effect amounted to a contract or agreement for the observance by the person licensed of the provisions of the liquor tax law, and that the sum named in the bond

was fixed as the amount which in certain contingencies should be paid as damages, which could not be fixed by any of those methods which commonly are applied to the determination of damages. Lyman v. Gramercy Club, 28 App. Div. 30, 35, 50 N. Y. Supp. 1004; Lyman v. Broadway Garden Hotel Co., 33 App. Div. 130, 53 N. Y. Supp. 347; Lyman v. Shenandoah Social Club, 39 App. Div. 459, 57 N. Y. Supp. 372; Lyman v. Perlmutter, 166 N. Y. 410, 60 N. E. 21. The Legislature, having control of the traffic in liquor, had the undoubted right by means of the requirements for such a bond, in addition to other civil and criminal penalties prescribed for violations of laws regulating this subject, to secure observation of such laws, and to discourage, repress, and punish any abuses, evasions, and violations which persons might be tempted to attempt. It had the undoubted right to prescribe the terms and conditions under which the individual defendant might traffic in liquor as a pharmacist. If, as one of those conditions, he and his surety have executed a bond, which, upon a fair construction of its terms, makes them liable for the unlawful act of an employé even though transgressing specific instructions, there is no reason why they must not submit to such result. Our attention has been called to no authority which can be regarded as controlling upon us upon this question. The learned counsel for the plaintiff has cited one or two decisions at Trial Terms, and various expressions from opinions delivered by the Appellate Courts, which favor his contention. While some authorities have been cited by the learned trial justice in his careful opinion, and also by the counsel for the respondents, upon the general relation of principal and agent, which it is urged are opposed to a recovery in this case, we think that upon an examination they may all be so distinguished from the case at bar as not to be decisive thereof. We are therefore left to solve the problem at issue by the ordinary and general rules of construction and principles which seem to be applicable.

At the outset defendant's counsel calls our attention to the language used in the bond prohibiting certain things as indicating that the violation here complained of could not be charged to the employer because of the disobedient act of his servant. He calls attention to the fact that whereas the bond provides that the person to whom the certificate is issued will not "suffer or permit" certain things to be done, the provision in this action relied upon is that "he will not violate" certain provisions; that the fair implication from a comparison of these clauses is that in the first case a proprietor might be held responsible for violations committed by others without his authority or assent, but that in the last case he could not be so held. We think that undue importance in behalf of defendants' argument is attached to the language used. The condition against "suffering or permitting" relates to various illegal acts and conditions which could scarcely become offensive without the conduct of others than the person licensed. The bond would not be efficient if it simply prohibited gambling or disorderly conduct alone by the person licensed, and therefore he is, in effect, required not to suffer or permit it to be done by others than himself; and we do not think that any argument flows therefrom that the clause that he will not violate the provisions of the liquor tax law is simply

limited to his individual acts, as distinguished from those which also might be performed by his employés and servants.

Counsel for respondents also urges that the principles by which proceedings for the revocation and cancellation of liquor tax certificates have been sustained are not applicable, because the statute authorizing such proceedings expressly refers to violations committed not only by the holder of said certificate, but "by his agent, servant, bartender, or any person whomsoever in charge of said premises." While it may be that such provision specifically making a holder of a certificate liable for the misconduct of his servants and agents does little more than to expressly embody in words what the general principles of law applicable to principal and agent would necessarily imply, we still have so far acquiesced in his views as not to assume for the purposes of this discussion that the decisions based upon such provisions of the statute are controlling authorities for the proposition that the holder of a certificate is responsible for the unauthorized act of his employé under the provision of the statute here up for review. As we regard it, plaintiff, in seeking a recovery upon the facts appearing in this case, does no more than to invoke the general principles applicable to the relation of employer and servant so far as third parties are concerned. It is so well settled as to be elementary that the principal is liable to third persons for the misfeasance, negligence, and omissions of his agent in the business of his agency. A principal is confessedly liable for the acts of his agent within the scope of his general authority. A master is responsible for the fraudulent misrepresentations or deceit as well as for the negligence or other wrongful act of a servant, if committed in the business of his master, and within the scope of his employment, although in doing it he departed from or violated the instructions of the master. A principal cannot exonerate himself from liability for the acts of his agent by showing that they were committed in violation of his instructions. Smith v. Reynolds, 8 Hun, 128, 130; Verona Central Cheese Co. v. Murtaugh, 50 N. Y. 314. The test of a master's responsibility for the act of his agent is whether the act was done in the prosecution of the master's business, not whether it was done in accordance with the instructions of the master to the servant. When, therefore, the servant, while engaged in the prosecution of the master's business, deviates from his instructions as to the manner of doing it, this does not relieve the master from liability for his acts. Cosgrove v. Ogden et al., 49 N. Y. 255, 10 Am. Rep. 361. The liability of the employer for the acts of his servant is not limited to those which have been committed carelessly or negligently, but extends to and covers those which have been committed intentionally and wrongfully. A familiar class of cases illustrating this are those where an employé of a railroad company has designedly and wrongfully thrown or ejected a person from a car. In such cases it has never been held that the employer would be relieved of liability because he had given instructions forbidding such act, provided only the act was performed by the servant within the general line of his duty, and having in view the business of his employer. Reasoning by analogy from such principles and decisions, we see no good reason why the holder of a liquor tax certificate should not be held responsible for the

act of his clerk in improperly selling liquor while engaged in the performance of his master's business, even though in such act he violated his specific instructions. And, if this is so, concededly the defendants' liability follows upon the bond in question.

When defendants complied with the provisions of the statute through which alone the issuance of a certificate could be obtained by giving a bond to the effect that the holder would not violate the provisions of such law, they justly may be held to have assumed the burdens and disadvantages which accompanied the privileges thereby secured. It is not violent to assume that at the time said certificate was issued and said bond executed the parties assumed that the holder would not limit himself to such business as he might personally do, but that, upon the other hand, he would employ clerks. Nobody would seriously claim that the certificate issued to him covered and protected only those sales of liquor which he might personally make, and that any clerk making a sale would be guilty of an illegal act. Likewise, upon the other hand, we think that the state had a right to expect, and that a fair construction of the language used sustains the expectation, that when, as a condition and price of securing the certificate sought, a bond was executed to the effect that the holder would not violate the provisions of law surrounding such certificate, such agreement assured not only against the personal acts of the holder, but also against those to be performed by others whom he employed to stand in his place and stead. Such a bond is an assurance that such authorized business will be conducted in the manner prescribed by the liquor tax law, and not otherwise; that the privilege of trafficking in liquor will not be abused; and that all of the requirements of the law will be observed in the conduct of the business. It is a contract with the state touching the conduct of the business. Lyman v. Schermerhorn, 53 App. Div. 32, 34, 65 N. Y. Supp. 538.

The surety upon such an undertaking can, of course, guard against liability by limiting his engagements to the guaranty of a proprietor who will be responsible and careful in the conduct of his business, and the proprietor in turn can protect both himself and his surety from liability under the interpretation which we are giving to the clause before us for review either by personally conducting the business of selling liquor or else by selecting as agents and clerks to stand in his place only those who will be obedient and law-abiding. The proprietor has absolute control over these details, and the state necessarily has almost none. The law providing for the issuance of certificates, subject to only a few exceptions, gives an absolute right to the applicant to take one out. Dependence is placed upon provisions requiring observance of the law and punishing violations thereof, rather than upon a selection of persons who are to conduct the business. In the administration of this business great reliance—and justly, as we believe—has come to be placed upon the execution of bonds like the one now before us as guarantying a responsible, careful, and law-abiding conduct of the traffic in liquors. The surety becomes interested in and watchful of the character of the vendor for whose fidelity he has engaged, and by the construction at which we have arrived the vendor in turn will become interested in and watchful of the character and conduct of

those to whom he delegates the conduct of this business. We think this is as it should be. Upon the other hand, we believe that a very wide and unfortunate breach would be made in the administration of the system now in force for the supervision and regulation of the traffic in liquor if it could be urged as a successful defense to an action brought upon a bond like this that the proprietor was temporarily absent, and that before going he had instructed the clerk whom he empowered to stand in his place in conducting the business not to violate the law. Somebody should be made responsible for the lawful management of a business under one of these certificates, and we think that naturally and properly that responsibility should be placed upon the proprietor of the business broadly enough so that he and his surety will be responsible for a violation of the law by a clerk and employé. The people of the state are offended and injured by the failure to observe the laws which they have adopted, and we see no good reason why they should be limited to a lesser degree of recourse against the employer of the clerk who has committed the offense than is ordinarily vouchsafed to third parties in other departments of business and life where an employé intrusted with the management of his employer's business has been guilty of wrongdoing.

It is suggested by the learned trial justice in his opinion that a decision allowing a recovery in such a case as this will work great injustice to the holder of the liquor tax certificate; that he can be subjected to loss of his license and the payment of penalties "simply because his servant for some petty grievance sold liquor contrary to law, and for the express purpose of injuring his master." We see no such danger as that. The same law which holds an employer liable for an act committed by his servant within the general line and scope of his authority, even though at variance with special instructions, establishes, upon the other hand, that the same employer will cease to be liable the moment his servant steps outside of his employment and starts in pursuit of some personal end, or attempts to gratify some personal motive.

The learned counsel for the respondent in a vigorous and attractive manner urges that confusion and inconsistency will follow from a decision such as we are making. Certain provisions of the liquor tax law provide that the holder of a certificate guilty of violating the law shall be guilty of a misdemeanor, and lose his certificate. The counsel points to the fact that concededly the defendant Burkhard could not, under these provisions, upon the facts of this case, be convicted of a misdemeanor, and deprived of his certificate. Therefore he complains because the facts which would not secure such a conviction and loss under one part of the law are still "good enough," as he phrases it, to secure a liability under other provisions of the law relating to the bond in question. We fail to see anything especially new, strange, or anomalous in these results. The Legislature had the perfect right to prescribe any number of different remedies and liabilities for violation of the law. The one imposing a responsibility under this bond is in addition to and outside of the other ones referred to by counsel. An employer may very well be liable civilly for the acts of his servant, and still not be subject to conviction criminally. Referring again to

an illustration in the relation of principal and agent already utilized, a common carrier would be liable civilly for the unauthorized and unlawful act of his employé who, in seeking to promote the business in which he was engaged, unlawfully and improperly ejected a person from a car. Said employer, however, assuming that he was an individual, could not by any means be criminally convicted of assault and battery for such unauthorized and forbidden act.

Entertaining these views, we think the judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.